IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY HAMOND MURPHY,<br>*on behalf of himself and all others*<br>*similarly situated* | ) ) ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:21-cv-00017 (Erie) |
| | ) ) ) | |
| vs. | ) ) | HON. RICHARD A. LANZILLO |
| EYEBOBS, LLC, | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) ) | MEMORANDUM OPINION |
| | ) | ON PLAINTIFFS' MOTION TO CERTIFY |
| Defendant | ) | CLASS FOR SETTLEMENT PURPOSES |
| | ) | AND TO APPROVE PROPOSED CLASS |
| | ) | ACTION SETTLEMENT |
| | ) ) | ECF NO. 30 |

I.      Introduction

The Amended Complaint in this case raises a putative class action lawsuit against Defendant

Eyebobs, LLC, an eyewear company ("Eyebobs").  *See* ECF No. 29.  The Plaintiff, Anthony

Hammond Murphy ("Murphy" or "Plaintiff") is visually impaired and brings this action for himself

and others similarly situated.  *Id.*, p. 1.  Murphy alleges that Eyebobs failed to make its digital

properties reasonably accessible to visually impaired persons in violation of the effective

communications and equal access requirements of Title III of the American with Disabilities Act

(ADA), 42 U.S.C. § 12181-12189.[1]  *Id.*, ¶ 1.  The Parties have consented to the jurisdiction of a

United States Magistrate Judge in these proceedings pursuant with the Magistrate Judges Act, 28

---

[1] The proposed settlement agreement defines "digital properties" as Eyebob's "Website, New Websites and Mobile Apps, and subsequently acquired Websites and Mobile Apps."  See ECF No. 30-1, ¶ 2.15.

U.S.C. § 636(b)(1).  *See* ECF Nos. 6. 7.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.  *See also Sullivan-Blake et al., on behalf of themselves & others similarly situated v. Fedex Ground Package System, Inc.*, 2021 WL 3563389, at *1 (W.D. Pa. Aug. 12, 2021).

Presently before the Court is Murphy's unopposed Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement.  ECF No. 30.  As explained below, the motion will be **GRANTED**.

II.     Factual and Procedural Background

Murphy, acting individually, commenced this action on January 7, 2021.  ECF No. 1.  He alleged that Eyebobs did not have adequate policies and practices reasonably calculated to cause the website for its online store ([http://www.eyebobs.com](http://www.eyebobs.com)) (Website) to be fully accessible to blind or visually disabled individuals in violation of the ADA.  Eyebobs filed an Answer on March 15, 2021. *See* ECF No. 8.  On September 2, 2021, the Court granted Murphy leave to file an Amended Complaint asserting claims on his own behalf and on behalf of a putative class of similarly situated, visually impaired individuals who have accessed, attempted to access, or been deterred from attempting to access Eyebobs' Website from the United States.  ECF Nos. 28, 29.  The Court docketed Murphy's Amended Complaint the same day.  On September 4, 2021, Murphy filed this unopposed Motion to Certify Class and for Preliminary Approval of Class Action Settlement.  ECF No. 30.  Eyebobs consents to the relief requested in the motion.  *Id.*  The undersigned conducted a hearing on the motion on October 5, 2021.  *See* ECF No. 32.  Although filed as a single motion, for purposes of this Memorandum Opinion, each request will be discussed separately.

III.     Motion to Certify Class for Settlement Purposes

Murphy seeks certification of a nationwide class of all blind and visually impaired individuals who use screen reader and other auxiliary aids to navigate Eyebobs' webpage and other digital content but have been deterred from doing so due to the absence of features to facilitate access.

2

Motions to certify a class are governed by Rules 23(a) and (b) of the Federal Rules of Civil Procedure.  Rule 23(a) sets forth four threshold requirements for class certification, each of which must be met: (1) the class is so numerous that joinder of class members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the class representatives are typical of those of the class (typicality); and (4) the class representatives will fairly and adequately protect the interests of the class (adequacy).  *See, e.g.*, *Rittle v. Premium Receivables, LLC*, 2018 WL 6599114, at *2 (M.D. Pa. Oct. 15, 2018), *report and recommendation adopted*, 2018 WL 6178175 (M.D. Pa. Nov. 27, 2018).

To certify a class, a court must also find that one of the following requirements, set forth in Rule 23(b), are met: (1) that prosecution of separate actions risks either inconsistent adjudications, which would establish incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of others; (2) that defendants have acted or refused to act on grounds generally applicable to the class; or (3) that there are common questions of law or fact that predominate over any individual class member's questions and that a class action is superior to other methods of adjudication.

The United States Supreme Court has made it clear that plaintiffs must not merely plead the existence of the Rule 23 requirements but prove them.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  As a result, district courts must perform a "rigorous" analysis to determine whether the Rule 23(a) prerequisites are satisfied.  *Id.* at 351 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

The Plaintiff seeks the certification of a class of

> All blind or visually disabled individuals who use screen reader auxiliary aids to navigate content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Digital Properties from the United States.

ECF No. 30, ¶ 4.  With that proposed class in mind, the Court will first address each of the Rule 23(a) requirements.

A.      Numerosity

Numerosity requires that "the class ... be 'so numerous that joinder of all members is impracticable.'"  *Id.* (quoting Fed. R. Civ. P. 23(a)(1)).  Courts will presume that numerosity is met if "the potential number of plaintiffs exceeds 40."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, the record establishes that the proposed class significantly exceeds 40 individuals.  The Plaintiff points out that more than 8.1 million people age 15 or older in the United States (3.3 percent) have difficulty seeing, including 2.0 million people who are blind or unable to see.  ECF No. 31, p. 23 (citation omitted).  Research also reveals that more than ninety percent of adults in the United States use the internet.  *Id.* (citation omitted).  Based upon these statistics, Murphy extrapolates that approximately 7.3 million adults who have difficulty seeing and that 1.8 million adults who are blind can be expected to use the internet.  They further assert that any number of these individuals may seek to access and shop for eyeglasses and other items through Eyebobs' digital properties.  *Id.,* p. 24.  Based on this record, Murphy has satisfied the numerosity requirement for class certification.

B.      Commonality

"A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Rodriguez v. Nat'l City Bank,* 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation marks omitted).  The Third Circuit has found this requirement is "easily met" because a single issue of fact or law will suffice.  *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  In fact, "class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice."  *Id.* (citing *Hassine*, 846 F.2d at 177–78).

4

"Moreover, because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Id.* at 57 (quoting 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil § 1763, at 201 (2d ed. 1986)). *See also Thakker v. Doll*, 2020 WL 5737507, at *4 (M.D. Pa. Sept. 24, 2020).

Murphy identifies two principle common questions: first, "whether [class members] have been, are being and/or will be denied full and equal access to the Defendant's website without proper accommodation; and second, "what actions are required under the law to ensure Defendant's online store is accessible to the Plaintiff" and the purported class members. ECF No. 31, p. 24. Because each question "is central" and can be resolved across the class "in one stroke," Murphy has satisfied the commonality requirement. *Norman v. Trans Union, LLC*, 2020 WL 4735538, at *30 (E.D. Pa. Aug. 14, 2020) (quoting *Dukes*, 564 U.S. at 350, 131 S. Ct. 2541).

C.      Typicality

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Balestra v. Cloud With Me Ltd.*, 2020 WL 4370392, at *3 (W.D. Pa. July 2, 2020), *report and recommendation adopted*, 2020 WL 4368153 (W.D. Pa. July 30, 2020) (citing *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (quotation omitted)). Here, the Plaintiff alleges that Eyebobs violated his rights and the rights of class members under the ADA by failing to make its digital properties accessible to persons with visual impairments. ECF No. 31, p. 25. The class description and the nature of the accessibility claims support a finding that Murphy's claims are typical. Eyebobs has offered no argument to the contrary and the Court finds no reason to disagree with this conclusion

5

based on the claims presented.  *See, e.g., Balestra,* 2020 WL 4370392, at *3.  Thus, the typicality prong

has been met.

       D.      Adequacy

       Finally, Rule 23 requires that the representative parties fairly and adequately protect the

interests of the entire class.  Fed. R. Civ. P. 23(a)(4).  This is a two-pronged inquiry: (1) whether the

representative's interests are antagonistic to those of the class; and (2) whether the attorneys for the

class representatives are capable of and qualified to represent the entire class.  *See Beck v. Maximus,*

*Inc.,* 457 F.3d 291, 296 (3d Cir. 2006); *Baby Neal,* 43 F.3d at 55.  Here, Murphy argues that his

interests are the same as those of the putative class members and they have a strong interest in

establishing liability.  He further alleges that there are no conflicts between his interests and those of

the putative class members.  Nothing on the record contradicts those assertions.

       As to the adequacy of representation by proposed class counsel, the Court has reviewed the

professional biographies of and other record materials concerning Attorneys Kevin W. Tucker,

Kevin Abramowicz, and Lawrence H. Fisher of the East End Trial Group of Pittsburgh,

Pennsylvania, whom Murphy has retained to protect the interests of the proposed class.  The Court

finds that they have the requisite education and experience to effectively represent the class.  Their

diligent and effective representation to date and during the Parties' extensive settlement negotiations

also support a finding that they can effectively represent the class and are committed to doing so.

This Court is also familiar with the quality of representation the foregoing counsel provided to class

plaintiffs in similar cases recently pending before this Court, and the diligence they have

demonstrated in implementation of proposed settlements in those cases.  *See Murphy v. Charles*

*Tyrwhitt, Inc.,*  2021 WL 21510, at *1 (W.D. Pa. Jan. 4, 2021).  Based on the above, the Court

concludes that both Murphy, the proposed lead plaintiff, and Attorneys Tucker, Abramowicz,

Fisher, associates and staff will fairly and adequately protect the interests of the entire class and provide capable legal representation.  As a result, the adequacy prong has been satisfied.

Now that the Court has found that the Rule 23(a) prerequisites are met, it must examine the requirements of Rule 23(b).

E.      Rule 23(b)(2) Certification

Under Rule 23(b), if the putative class has satisfied all the elements under Rule 23(a), the class may be certified as a 23(b)(2) class and/or a 23(b)(3) class.  *See Slamon v. Carrizo (Marcellus) LLC*, 2020 WL 2525961, at *14 (M.D. Pa. May 18, 2020).  Here, Murphy asserts class claims for a permanent injunction under Rule 23(b)(2) to remove the barriers currently present on Eyebobs' digital properties and to modify the policies and practices that have created or allowed inaccessibility to affect those same properties.  ECF No. 18, ¶ 65.

To certify a class under Rule 23(b)(2), the party opposing the class must have "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).  The final injunctive relief or corresponding declaratory relief must be "appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against a defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.  *See Dukes*, 564 U.S. at 360-361 (internal citations and quotation marks omitted)(emphasis in original).

As relief, Murphy requests a mandatory injunction to require Eyebobs to (1) modify their digital properties to remove barriers they allegedly present to access by blind and visually impaired visitors to Eyebobs' online store, and (2) revise its policies and practices concerning such access. ECF No. 29, p. 24, ¶¶ (B)-(C). *See also Liberty Res., Inc. v. City of Philadelphia*, 2020 WL 3816109, at *4 (E.D. Pa. July 7, 2020).  This requested relief invokes a single, common remedy for all class members: equal and full access to Eyebobs' digital properties.  That is, Plaintiff's claim for injunctive relief satisfies Fed. R. Civ. P. 23(b)(2) because Eyebobs' website and other digital properties affect all members of the class, and thus the class as a whole shares the same interest in obtaining the injunctive relief provided by the settlement — prospective changes to Eyebobs' digital properties. *See, e.g., Foster v. City of Pittsburgh*, 2015 WL 11112431, at *3 (W.D. Pa. Nov. 18, 2015).

Further, Murphy also requests nominal damages, payment of costs, and attorneys' fees, including costs associated with monitoring Eyebobs' compliance.  These ancillary remedies to not defeat certification under Rule 23(b)(2).  *See, e.g., George v. Baltimore City Public Sch.*, 117 F.R.D. 368, 372 (D. Md. 1987) (holding that a request for ancillary money damages in a *Hudson* action does not preclude class certification under Rule 23(b)(2)); *Hunter v. City of Philadelphia*, 1999 WL 181388, at *4 (E.D. Pa. Jan. 29, 1999).  Certification of the proposed class under Rule 23(b)(2) is not precluded when the settlement provides for counsel fees and reimbursement of the costs of issuing the required notice to the putative class where, as here, the primary relief provided is injunctive and the challenged conduct of the defendants is such that injunctive relief would be appropriate.  *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d at 251 (class action maintainable under Rule 23(b)(2) even though monetary relief is sought as well as injunctive relief).  Therefore, the Court finds that, for purposes of the anticipated settlement, the proposed class can properly be certified under Rule 23(b)(2).  *See Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273, at *6 (E.D. Pa. Oct. 29, 1990).

In summary, the Court concludes that the requirements of Rule 23(a) and (b)(2) have been met and that class certification is appropriate. Accordingly, the Plaintiffs' request for class certification is GRANTED.

IV.    The Court Approves the Proposed Settlement

Murphy next moves for approval of their Proposed Settlement, a copy of which they have attached to their motion. *See* ECF No. 30-1. What follows is a brief summary of its material terms.

A.    The Proposed Settlement

The Proposed Settlement Agreement is a comprehensive, 25-page document executed by "Eyebobs, LLC and Anthony Hammond Murphy, individually and on behalf of the Settlement Class." Id., ¶ 1. The Proposed Settlement commits Eyebobs to ensuring "Blind or Visually Disabled individuals full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through its Digital Properties ..." *Id.*, ¶ 4. This commitment includes ensuring that "the U.S. portion of the Website is Accessible" within twenty-four months of the Effective Date of the Settlement Agreement. *Id.*, ¶ 4.1. Eyebobs' "Digital Properties" are its "Website, New Websites, Mobile Apps," and "Subsequently Acquired Websites and Mobile Apps," as those terms are defined in the Settlement Agreement. *Id.*, ¶ 1.2. The parties have agreed that the criteria for determining Eyebobs' compliance with its accessibility commitments will be "the Web Content Accessibility Guidelines 2.1, including WAI-ARIA." *Id.*, ¶¶ 2.1, 2.43.

In addition, the Proposed Settlement commits Eyebobs to several changes in policy, procedure and personnel to promote accessibility of its Digital Properties. These changes include (1) Eyebobs' appointment of one or more employees to comprise an "Accessibility Coordination Team," (2) the performance of an Accessibility Audit of its Digital Properties, (3) Eyebobs' adoption of an Accessibility Policy Statement, (4) Eyebobs' implementation of an Accessibility Strategy, (5) Eyebobs' providing of Accessibility Training, and (6) Eyebobs' retention of an "Accessibility

Consultant" to "assist Eyebobs to conduct an Accessibility Audit of the Website; (b) advise Eyebobs' on how to make the Website Accessible; (c) verify that the Website is Accessible by the end of the Agreement Term; (d) ensure any New Websites and Mobile Apps, and any Subsequently Acquired Websites and Mobile Apps, are Accessible; and (e) ensure any Third Party Content that may be required to be Accessible is Accessible." *See id.*, ¶¶ 6-11. Each of Eyebobs' commitments is subject to specific time periods for compliance following the Effective Date of the Settlement Agreement. *Id.* Overall compliance is to occur within three years of the Effective Date of the Settlement Agreement. If compliance does not occur within this initial term, the Settlement Agreement provides for a term extension to four years and, if necessary, to five years to ensure compliance. *Id.*, ¶ 16. The Settlement Agreement also provides for monitoring of Eyebobs' compliance with its commitments, annual reporting, and dispute resolution procedures. *Id.*, ¶¶ 17,-18, 23. The Settlement Agreement further provides for an "Incentive Award" in the amount of $1,000 to be paid to the Representative Plaintiff, Mr. Murphy, and the payment of specified attorney's fees and costs to class counsel, subject to court approval. *Id.*, ¶¶ 20, , 24-25.

In consideration for the foregoing commitments by Eyebobs, Murphy and all Settlement Class Members will release Eyebobs from any and all claims for injunctive, declaratory, and non-monetary relief based on the accessibility of its digital properties and be enjoined from asserting any such claims. *Id.*, ¶¶ 29-30.

B.    Notice

Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See also McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970, at *5 (E.D. Pa. Nov. 20, 2020). The Parties ask the Court to approve their proposed class notice and notice plan, which are attached as exhibits to their motion for preliminary approval. *See id.*, ¶ 27. The Notice Murphy proposes to issue to potential class

members accurately summarizes all material terms of the Settlement Agreement.  *See id.*, ¶ 27.  The

Parties acknowledge that Eyebobs will have a notice of class action settlement placed on the

Settlement Website.[2]  Screen-reading applications will recognize this link and alert the user to its

information before proceeding to any other part of the website.  *Id.*, ¶ 27.2.  The link will include

alternative text which reads, "Click to view our ADA Class Action Settlement Notice."  *Id.*  In

addition, Eyebobs will request that the National Federation for the Blind and the American Council

of the Blind—as well as eight other national organizations for the visually impaired—publish a link

to the stipulated class action settlement notice in their respective electronic newsletters within sixty

(60) days of preliminary approval.[3]  *Id.*, ¶ 27.3.  This Notice will state:

> A proposed settlement has been reached that would resolve the class
> action lawsuit Murphy v. Eyebobs, LLC, No. 1:21-cv-00017 (W.D.
> Pa).  The lawsuit alleges that Eyebobs, LLC violated the Americans
> with Disabilities Act, 42 U.S.C. § 12101, et seq. by failing to take the
> necessary steps to ensure its online store, located at
> https://www.eyebobs.com/, does not discriminate against blind or
> visually disabled consumers who use screen reader auxiliary aids to
> access digital content.  Under the settlement, Eyebobs, LLC agrees to
> take additional steps to make its website and any new website or
> mobile application it develops or acquires accessible to screen reader
> users.  For a more complete summary of the terms of the proposed
> settlement, please visit https://www.eyebobsADAsettlement.com.

*Id.*, ¶ 27.4.

---

[2] The Settlement Agreement explains that the Settlement Website is a "search-engine-optimized website located at
https://eyebobsADAsettlement.com and operated by a stipulated class action settlement administrator or similar entity
that will provide the stipulated class action settlement notice pursuant to Section 27 of this Agreement."  ECF No. 30-1,
¶ 2.38.

[3] In addition to the National Federation for the Blind and the American Council of the Blind, the Settlement Agreement
states that Eyebobs will request that notice be published in the electronic newsletters of the following organizations:
American Foundation for the Blind, Blinded American Veterans Foundation, Blinded Veterans Association, Foundation
Fighting Blindness, Guide Dogs for the Blind, Lighthouse Guild International, National Association of Blind Merchants,
and the National Council on Disability.  ECF No. 30-1, ¶ 27.3(1)-(10).

The Court finds that the proposed notice is the best practicable form of notice to inform putative class members of the settlement and to proceed with the settlement for all claims in a timely and efficient manner.

C.     Rule 23(e) Review

Rule 23(e) of the Federal Rules of Civil Procedure mandates court approval of a class action settlement:

> The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the Court's approval.

The Rule further requires a court to review the proposed settlement to ensure that the rights of the participating as well absent class members are not prejudiced or otherwise put in jeopardy by the settlement.[4]  Fed. R. Civ. P. 23(e); *see also In re Asbestos School Litig.*, 1990 WL 18761 (E.D. Pa. Feb. 20, 1990); *Sherin v. Gould*, 679 F. Supp. 473, 475 (E.D. Pa.1987) (quoting *William v. First Nat'l Bank,* 216 U.S. 582, 595 (1910)).  So while protecting rights of the class members is essential, it has also been recognized that any apprehension in settling should be tempered by the long-standing policy favoring such agreements. *Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273, at *6 (E.D. Pa. Oct. 29, 1990) (citations omitted).

D.     The Court Will Apply a Presumption of Fairness to the Proposed Settlement

Courts initially apply a presumption of fairness in reviewing a class settlement when: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016) (citing *In re Cendant*, 264 F.3d at 232 n. 18)).  This presumption applies even when, as

---

[4] Rule 23(e)(2) mandates a hearing on the request to approve the proposed settlement.  Such a proceeding was conducted on October 5, 2021.

here, "the settlement negotiations preceded the actual certification of the class ...."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).  These requirements have been met here and the presumption of fairness should apply to the proposed settlement.

This action was actively litigated since its inception in January of 2021, before an agreement was had in September of 2021 to resolve the litigation.  The Proposed Settlement resulted from arm's-length negotiations between highly experienced and capable counsel after significant investigation.  The Parties relate that they devoted "months" following the filing of the Complaint to discussing the resolution of this case.  ECF No. 31, p. 32.  Both parties have agreed to the proposed settlement.  *See* ECF 30-1, ¶ 1.  No objections to the settlement have been lodged.  *See, e.g., In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *4 (D. Del. Nov. 19, 2018).  Moreover, the principal lawyers involved in the settlement negotiations are all well known for their effective representation of their clients, and have many years of experience in the prosecution, defense, and resolution of complex securities actions.  *See, e.g., In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016).

Given the many undisputed facts, this case did not require a protracted period of discovery. The Parties' investigation included "multiple rounds of in-person reviews" regarding the accessibility of Eyebobs' online store before Murphy filed his initial Complaint.  ECF No. 31, p. 33.  Murphy was able to ascertain, through his own informal discovery, that Eyebobs' website did not provide him with full access and that additional discovery was not needed thus not needed.  *Id.*  Nor was additional discovery necessary to determine whether Eyebobs' current accessibility policies were sufficient to accommodate the needs of the visually impaired.  *Id.*  Instead, the Parties' investigation prompted almost immediate discussions of settlement following the filing of the initial pleadings in this action.  Thus, while no formal discovery was conducted, "informal discovery" appears to have taken place, which satisfies this prong of the presumption analysis.  *See, e.g., In re Nat'l Football League*

*Players Concussion Injury Litig.*, 821 F.3d at 436, *as amended* (May 2, 2016) (concluding that informal discovery was sufficient class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation). *See also In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (applying presumption in part because, "although no formal discovery was conducted ..., [class counsel] conducted informal discovery, including, *inter alia*, independently investigating the merits"). Therefore, the presumption of fairness attaches to the proposed settlement.

      E.     An analysis of the *Girsh* factors further supports the fairness of the proposed settlement.

Despite the attachment of the presumption of fairness, a class action settlement may not be approved under Rule 23(e) without a determination by the Court that the proposed settlement is "fair, reasonable and adequate." *See In re Cendant*, 264 F.3d at 231; *see also* Fed. R. Civ. P. 23(e)(1)(A). The Third Circuit has on several occasions stressed the importance of the reasonableness and fairness of a class action settlement, noting that "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re General Motors*, 55 F.3d at 785 (citations and quotations omitted); *see also Amchem*, 521 U.S. at 623, 117 S. Ct. 2231 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted). Indeed, in cases such as this, where settlement negotiations precede class certification and approval for settlement and certification are sought simultaneously, the Third Circuit requires district courts to be even "more scrupulous than usual" when examining the fairness of the proposed settlement. *See In re General Motors*, 55 F.3d at 805. This heightened standard is intended to ensure that class counsel has engaged in sustained advocacy throughout the proceedings, particularly in settlement negotiations,

and has protected the interests of all class members. *See In re Prudential Ins. Co.*, 148 F.3d at 317. *See also Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 101 (D.N.J. 2018).

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975), the Court of Appeals for the Third Circuit identified the following factors to be considered in determining whether a proposed class action settlement agreement is fair, adequate and reasonable:

> 1.  The complexity, expense and likely duration of the litigation;
>
> 2.  The reaction of the class to the settlement;
>
> 3.  The stage of the proceedings and the amount of discovery completed;
>
> 4.  The risks of establishing liability;
>
> 5.  The risks of establishing damages;
>
> 6.  The risk of maintaining the class action through the trial;
>
> 7.  The ability of the defendants to withstand a greater judgment;
>
> 8.  The range of reasonableness of the settlement in light of the best possible recovery; and
>
> 9.  The range of reasonableness of the settlement fund to a possible recovery in light of all the possible attendant risks of litigation.

521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974)).[5]

The Court's role in evaluating a proposed settlement is limited. Although the Court may either approve or disapprove the settlement, it may not rewrite it. *Harris,* 654 F. Supp. at 1049. *See also Callahan*, 1990 WL 168273, at *6–7. The "nine-factor [*Girsh* ] test requires this Court to conduct

---

[5] The *Girsh* factors stem from two primary concerns: (1) class members may not be adequately represented or (2) class interests may not be adequately protected. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir.2011) (explaining that " 'trial judges bear the important responsibility of protecting absent class members,' and must be 'assur[ed] that the settlement represents adequate compensation for the release of the class claims'" (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010). Indeed, Federal Rule of Civil Procedure 23 specifically requires that "a class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 524 (E.D. Pa. 2016) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)).

both 'a substantive inquiry into the terms of the settlement relative to the likely rewards of litigation'

and 'a procedural inquiry into the negotiation process.'"  *Prudential I*, 962 F. Supp. at 534 (quoting

*General Motors*, 55 F.3d at 796).  As discussed below, not all of these factors apply to this case

because Murphy is seeking injunctive relief under Rule 23(b)(2).  *See, e.g.*, *Williams v. City of*

*Philadelphia,* 2016 WL 3258377, at *3 n.2 (E.D. Pa. June 13, 2016).

Further, this *Girsh* list is not exhaustive.  The Court of Appeals explained that "since *Girsh*

was decided in 1975, there has been a sea-change in the nature of class actions, especially with

respect to mass torts."  *Prudential II*, 148 F.3d at 323.  Thus, it charged "district courts [to] consider

other potentially relevant and appropriate factors.  *In re AT & T*, 455 F.3d at 165. The following

factors were provided as a non-limiting list of examples:

> the maturity of the underlying substantive issues, as measured by
> experience in adjudicating individual actions, the development of
> scientific knowledge, the extent of discovery on the merits, and other
> factors that bear on the ability to assess the probable outcome of a
> trial on the merits of liability and individual damages; the existence
> and probable outcome of claims by other classes and subclasses; the
> comparison between the results achieved by the settlement for
> individual class or subclass members and the results achieved-or
> likely to be achieved-for other claimants; whether class or subclass
> members are accorded the right to opt out of the settlement; whether
> any provisions for attorneys' fees are reasonable; and whether the
> procedure for processing individual claims under the settlement is
> fair and reasonable.

*Prudential II*, 148 F.3d at 323; *In re* AT & T, 455 F.3d at 165.  Additionally, the Court of Appeals

noted in *Warfarin II* that the settlement of class actions is preferred to protracted litigation:

> there is an overriding public interest in settling class action litigation,
> and it should therefore be encouraged.  *See General Motors*, 55 F.3d at
> 784 ("the law favors settlement, particularly in class actions and other
> complex cases where substantial judicial resources can be conserved
> by avoiding formal litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330,
> 1333 (3d Cir. 1990) (noting that the court encourages settlement of
> complex litigation "that otherwise could linger for years").

*Warfarin II*, 391 F.3d at 535.  After carefully weighing the *Girsh* factors along with the relevant additional factors discussed in *Prudential II,* the Court concludes that the proposed Settlement Agreement is fair, reasonable, and adequate.

        F.      The *Girsh* Factors

        1.      The Complexity, Expense, and Likely Duration of the Litigation

Under the first *Girsh* factor, courts must analyze "the probable costs, in both time and money, of continued litigation."  *General Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir.1974)).  When the Court finds, after balancing the Proposed Settlement against the anticipated expense, complexity, and time of possibly achieving a more favorable result through litigation, that the litigation would likely be expensive, complex, and time-consuming, this factor is found to favor settlement.  *Prudential I*, 962 F. Supp. at 536.

The complexity and associated litigation risks of this case arise largely from the uncertainty regarding whether a website such as Eyebobs' is a "public accommodation" under Title III of the ADA.  The Court of Appeals for the Third Circuit has held that places of public accommodation must be physical places.  *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cit. 1998) ("The plain meaning of Title III is that a public accommodation is a place...."); *Peoples v. Discover Fin. Servs., Inc.*, 387 Fed. Appx. 179, 183 (3d Cit. 2010) ("Our court is among those that have taken the position that the term ['public accommodation'] is limited to physical accommodations.").  However, neither *Ford* nor *Peoples* involved issues of website accessibility.  Indeed, the Third Circuit has not specifically addressed whether a website, either standing alone or in association with a physical location, can be considered a public accommodation under the ADA.  The Court of Appeals has held, however, that a good or service provided by a public accommodation can be covered by the ADA, provided there is "some nexus between the services or privileges denied and the physical place...."  *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113,122 (3d Cit. 1998).  Clouding the picture further, district

courts within the Third Circuit have adopted different approaches to this issue.  *Compare Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp 908 (W.D. Pa. 2017); *Suchenko v. ECCO USA, Inc.*, 2018 WL 3660117 (W.D. Pa. Aug. 2, 2018); *West v. DocuSign, Inc.*, 2019 WL 38443054 (W.D. Pa. August 28, 2019); *Suchenko v. ECCO USA, Inc.*, 2018 WL 3933514, at *3 (W.D. Pa. Aug. 16, 2018) (holding in actions by visually impaired plaintiffs that company websites available to the public are "public accommodations") with *Mahoney v. Herr Foods Inc.*, 2020 WL 1979153, *3 (E.D. Pa. Apr. 24, 2020); *Mahoney v. Bittrex Inc.*, 2020 WL 212010, *2 (ED. Pa. Jan. 14, 2013); *Tawam v. APCI Fed. Credit Union*, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018); *Walker v. Sam's Oyster House, LLC*, 2018 4466076, *2 (E.D. Pa. Sept. 18, 2018) (holding that a business' website -- on its own -- is not a "public accommodation," but may be considered such if it bears some nexus to a physical place or public accommodation).

Litigation here would have involved extensive motion practice, discovery, expert analysis and testimony and, given the state of relevant case law, the likelihood of significant appellate practice. Hence, the proposed settlement has allowed Murphy to achieve significant benefits for the class while avoiding the material expense and delay that would have been required to litigate his claims against Eyebobs.  Had Murphy and Eyebobs proceeded with this litigation, both would have expended countess hours of attorney time and considerable expense while facing significant uncertainty concerning the outcome of the litigation.  Such an undertaking "would not only further prolong the litigation but also reduce the value of any recovery to the class."  *Warfarin*, 391 F.3d at 536.  Thus, this factor supports the proposed settlement.

2.      The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement."  *Prudential II*, 148 F.3d at 318; *Warfarin II*, 391 F.3d at 536.  In gauging support, courts look at the number of objectors as well as opt-outs.  *See Prudential II*, 148 F.3d at 318; *Warfarin II*,

391 F.3d at 536. Courts also look to objectors' "vociferousness" and other factors to determine whether "class members possessed adequate interest and information to voice objections[.]" *General Motors*, 55 F.3d at 813.

Potential class members will have the opportunity to object to the settlement following notice. Based upon the benefits provided to the class under the Settlement Agreement, however, significant objections are not anticipated. As noted, the Settlement Agreement appears to provide relief to class members commensurate with the best outcome they could have hoped to achieve had they litigated the case to a conclusion.

3.      The Stage of the Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir.2001) (quoting *General Motors*, 55 F.3d at 813). The Parties have agreed to resolve their dispute at a relatively early stage in the litigation. Even so, proposed class counsel has engaged in extensive informal discovery including firsthand investigation and review of the level of accessibility afforded by Eyebobs' digital properties. *See* ECF No. 31, p. 37. This informal discovery and investigation, coupled with class counsel's experience in litigating similar, if not identical claims, gives counsel an adequate understanding of the merits of Murphy's case. Based on counsel's grasp of the claims, obtained through pre-filing and post-filing investigations as well as proposed class counsel's familiarity with such cases, the Court is satisfied that class counsel adequately appreciated the merits of the case before negotiating the settlement. This factor thus supports approval of the settlement.

    4.     The Risks of Establishing Liability and Damages

"The fourth and fifth [*Girsh*] factors survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Johnson & Johnson*, 900 F. Supp. 2d at 483 (internal quotations omitted). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. In making this assessment, however, "a court should not conduct a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 644-45 (D.N.J. 2004) (internal quotations omitted). In complex cases, "[t]he risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995). In applying these factors, "the Court need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by [Class Counsel], who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" *Glaberson v. Comcast Corp.*, 2015 WL 5582251, at *6 (E.D. Pa. Sept. 22, 2015) (quoting *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (citation omitted)).

As discussed above, the current state of the law regarding the application of Title III of the ADA presented significant risk to the Plaintiff class in this case. The complexity of this issue weighs heavily in favor of settlement. Against this risk and complexity, the Plaintiff class could not look forward to a potential recovery of monetary damages if they were to continue the litigation. *See, e.g., Sowers v. Freightcar Am., Inc.*, 2008 WL 4949039, at *4 (W.D. Pa. Nov. 19, 2008). Individual awards of money damages ate not available in an action pursuant to Title III of the ADA. Id. Thus, the complexity of this case and uncertainty on both sides with respect to liability and damages weigh in

favor of granting final approval of the settlement. *See, e.g., Zanghi v. Freightcar Am., Inc.*, 2016 WL 223721, at \*18 (W.D. Pa. Jan. 19, 2016). *See also Charles Tyrwhitt, Inc.*, 2020 WL 8513583, at \*11. This factor favors the settlement.

Like the fourth factor, the fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238–39 (quoting *General Motors*, 55 F.3d at 816). At this inquiry, a court compares a potential damage award if the case were taken to trial against the benefits of immediate settlement. *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at \*6 (D.N.J. July 29, 2013) (citing *Prudential*, 148 F.3d at 319). "Normally, proving damages involves many of the same risks as proving liability because the former is contingent upon the latter." *Rent–Way*, 305 F. Supp. 2d at 505 (citation & internal quotation marks omitted).

Here, the potential risks discussed in the context of establishing liability apply with equal force to Murphy's risks of establishing damages. *See, e.g., Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 253 (E.D. Pa. 2011). The uncertainty of the future of this litigation whether in this court or in the court of appeals is apparent. The Plaintiff through this settlement is obtaining the benefits he sought when he began this litigation. *See, e.g., Sowers v. Freightcar Am., Inc.*, 2008 WL 4949039, at \*4 (W.D. Pa. Nov. 19, 2008). No monetary relief would have been available to the Plaintiff directly, but only indirectly through any order granting equitable relief requested *Id.*

5.      The Risks of Maintaining a Class Action Through the Trial

"'Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action,' [the sixth *Girsh* factor] measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin II,* 391 F.3d at 537 (quoting *General Motors*, 55 F.3d at 817). This factor also necessitates an inquiry into the future of this action, had it continued. *Id.* A class action's value is heavily dependent on the class certification, "because, not only does the aggregation of the claims enlarge

the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits." *General Motors*, 55 F.3d at 817.  Class certification is not an unalterable state, as a "district court always possesses the authority to decertify or modify a class that proves unmanageable." *Prudential II*, 148 F.3d at 321.

The size of the nationwide classes here did not pose a problem for class certification purposes, as the classes were certified for settlement, not litigation.  However, if this Court were to certify the classes for litigation purposes, a significant risk exists that intractable management problems would result due to the size and scope of the classes.  As in *Warfarin II*, "the significant risk that the class would be decertified if litigation proceeded weighs in favor of settlement." *Warfarin II*, 391 F.3d 537.

6.     The Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor asks, "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240.  This factor comes into play where the Parties relate "that they have settled for a below-value amount because of concerns over the defendant's ability to pay, or where a court is concerned that a settlement is unduly small in light of the misconduct alleged and the defendant's demonstrable ability to pay much more." *Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *16 (W.D. Pa. June 26, 2020).  But since this is a Rule 23(b)(2) class action for injunctive relief, the Court need not consider the ability of Eyebobs to withstand a greater judgment. *Williams v. City of Philadelphia*, 2016 WL 3258377, at *3 n.2 (E.D. Pa. June 13, 2016) (citing *Serventi v. Bucks Technical High Sch.*, 225 F.R.D. 159, 167 (E.D. Pa. 2004)) (noting that certain factors do not apply when class does not seek monetary damages).

7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Recovery & The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation

The final two *Girsh* factors are often analyzed together, as they are viewed as testing "two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin II*, 391 F.3d at 538 (quoting *Prudential II*, 148 F.3d at 322). As with the previous factor, these last two have a neutral application because the Parties seek declaratory and injunctive relief. *See Sourovelis v. City of Philadelphia*, 2015 WL 12806512, at *5 (E.D. Pa. Nov. 4, 2015) (citing *Pastrana v. Lane*, 2012 WL 602141, at *5 (E.D. Pa. Feb. 24, 2012) (explaining that these factors are neutral where the "action was certified under Rule 23(b)(2) for injunctive relief").

In summary then, the Court concludes that the *Girsh* factors favor the approval of the Proposed Settlement as reasonable and fair to the class members.

G.    The *Prudential* Considerations

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, the Third Circuit identified additional, non-exclusive factors ("*Prudential* factors") for courts to consider along with the *Girsh* factors in reviewing a proposed class action settlement. 148 F.3d 283, 323-24 (3d Cir. 1998). *See also Robinson v. Enhanced Recovery Co.*, 2020 WL 5554481, at *2 (E.D. Pa. Sept. 16, 2020). While the Court must make findings as to the *Girsh* factors, the *Prudential* factors are merely illustrative of additional factors that may be useful. *Williams v. Aramark Sports, LLC*, 2011 WL 4018205, at *7 (E.D. Pa. Sept. 9, 2011) (citing *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir.2010)). And as with some of the *Girsh* factors, many of the concerns pointed out in *Prudential* are irrelevant here because the proposed class seeks, mainly, injunctive relief. For example, the development of scientific knowledge does not bear on this case. *See, e.g.*, *Williams*, 2011 WL 4018205, at *7.

Here, the only relevant *Prudential* factor is the reasonableness of the provision for attorney's fees.  Considering the experience of counsel, the time they have devoted to litigation and settlement negotiations, and the quality of their work product, the counsel fees specified in the Settlement Agreement appear entirely reasonable.  Counsel further indicates that a fee petition is forthcoming that will provide a specific overview of Plaintiff's fees expended and costs incurred in connection with this litigation.  Because such a petition will be subject to review and approval by the Court, this factor does not weigh against the fairness of the settlement.

V.    Conclusion

The Court applies a presumption of reasonableness to the Proposed Settlement.  Further, an application of the *Girsh* factors, as well as the relevant *Prudential* factors leads the Court to the conclusion that the Proposed Settlement is fair and reasonable.  Thus, the Court will grant the Plaintiff's motion to certify the proposed class.  A separate order follows.

Entered this 6th day of October, 2021.

_____
HON. RICHARD A. LANZILLO
United States Magistrate Judge