IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY HAMMOND MURPHY,

Plaintiff,

v.

EYEBOBS, LLC,

Defendant.

Civil Action No. 1:21-cv-00017-RAL

## ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Now pending before the Court is Plaintiff's Unopposed Motion for Final Approval of the Class Settlement Agreement. (Doc. 43.) On October 6, 2021, the Court preliminarily certified the following Settlement Class:[1] "All blind or visually disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Website from the United States." (Doc. 37 ¶ 3.) The Court also granted preliminary approval to the proposed class action settlement set forth in the Agreement. (*Id.*)

The Court held a final fairness hearing on January 20, 2022 to consider: (1) whether the terms and conditions of the Agreement were fair, reasonable, and adequate; (2) whether the Parties' Agreement should be given final approval; and (3) whether and in what amount to award attorney's fees to Class Counsel for the Settlement Class and whether and in what amount to award an incentive award to each of the Named Plaintiff. (Doc. _46_.) Having carefully considered the

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning set forth in the settlement agreement, which is attached hereto as Exhibit A.

motion, the relevant legal authority, and the proposed Agreement and all supporting documents, the Court **GRANTS FINAL APPROVAL** of the Agreement as set forth below.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**

      1.     The Court has personal jurisdiction over the Parties, venue is proper, and the Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto, to enter this Final Approval Order.

      2.     The Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Lawsuit") and of the strengths and weaknesses of their respective positions. The Agreement was reached after the Parties engaged in extensive settlement discussions. Counsel for the Parties were therefore well-positioned to evaluate the benefits of the Agreement, taking into account the expense, risk, and uncertainty of protracted litigation.

      3.     The Court finds that the distribution of the Class notice, as provided for in the Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Lawsuit, the nature and terms of the proposed settlement, their right to object to the proposed settlement, and their right to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

      4.     The Agreement is finally approved in all respects as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Agreement have been entered

into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties.

5.     The Parties are hereby directed to implement the Agreement according to its terms and provisions.

6.     The proposed Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for purposes of settlement. The Settlement Class is defined as:

> All blind or visually disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Website from the United States.

7.     The Court appoints and designates Plaintiff Anthony Hammond Murphy and as representative of the Settlement Class.

8.     The Court finds Kevin W. Tucker and Kevin J. Abramowicz of East End Trial Group LLC and Lawrence H. Fisher are experienced and competent class action counsel who fairly and adequately protected the interests of the putative class throughout this litigation and appoints them as Class Counsel for the Settlement Class.

9.     Upon entry of this Final Approval Order, the Injunctive Releasing Parties shall, by operation of this Order Granting Final Approval of Class Action Settlement, fully and finally release, acquit, and discharge the Eyebobs Parties from the Released Injunctive Claims as set forth in the Agreement.

10.     Pursuant to this release, Named Plaintiffs and the Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term. Notwithstanding this release, Plaintiff and the Settlement Class Members may fully utilize

the Dispute Resolution Procedure during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

11.    Plaintiff and all Settlement Class Members are, from this day forward, hereby enjoined from asserting any Released Injunctive Claims through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, to enforce this Agreement.

12.    The Court retains jurisdiction through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, to enforce this Agreement. The Court also retains jurisdiction as to all other matters relating to administration, consummation, enforcement, interpretation, or implementation of the Agreement and of this Order Granting Final Approval of Class Action Settlement, and for any other purpose, and expressly retains jurisdiction to enter such further orders as may be necessary or appropriate. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

13.    This Lawsuit, including all individual claims and class claims presented herein, shall be dismissed with prejudice no later than thirty (30) days following the expiration of the Agreement Term or, if applicable, the First Extended Agreement Term or Section Extended Agreement Term.

Entered and Ordered this 8th day of February, 2022.

HON. RICHARD A. LANZILLO
United States Magistrate Judge

4

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY HAMMOND MURPHY,

                  Plaintiff,

    v.

EYEBOBS, LLC,

                  Defendant.

Civil Action No. 1:21-cv-00017-RAL

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

<u>Table of Contents</u>

1.    Introduction ................................................................................................................ 1

2.    Definitions ................................................................................................................... 2

3.    Conditions Precedent.................................................................................................. 6

4.    Eyebobs Shall Make Its Digital Properties Accessible ............................................. 6

5.    Third-Party Content.................................................................................................... 7

6.    Accessibility Coordination Team ............................................................................... 7

7.    Accessibility Consultant and Status Report............................................................... 7

8.    Accessibility Audit ..................................................................................................... 8

9.    Accessibility Strategy ................................................................................................. 8

10.   Accessibility Statement .............................................................................................. 9

11.   Accessibility Training ................................................................................................. 9

12.   Modified Bug Fix Priority ........................................................................................ 10

13.   Customer Service Personnel ..................................................................................... 10

14.   Quarterly Accessibility Audit................................................................................... 11

15.   Annual End-User Accessibility Testing.................................................................... 11

16.   Agreement Term ....................................................................................................... 11

17.   Monitoring and Compliance ..................................................................................... 12

18.   Eyebobs' Reporting Schedule ................................................................................... 12

19.   Scope of Agreement .................................................................................................. 13

20.   Incentive Award to Plaintiff...................................................................................... 14

21.   Additional Information to Class Counsel and Named Plaintiff ................................. 14

22.   Annual Report and Meet-and-Confers ...................................................................... 14

23.   Dispute Resolution Procedure .................................................................................. 15

24.   Attorneys' Fees and Costs up to the Date of Final Approval.................................... 16

25.   Attorneys' Fees and Costs after Final Approval.................................................17

26.   Preliminary Approval, Objections, and Fairness Hearing .................................18

27.   Notice.................................................................................................................19

28.   Judgment, Final Approval, and Dismissal.........................................................20

29.   No Admissions of Liability ................................................................................21

30.   Release ...............................................................................................................21

31.   Class Certification..............................................................................................21

32.   Entire Agreement ...............................................................................................21

33.   Modification .......................................................................................................21

34.   Severability ........................................................................................................22

35.   Drafting of this Agreement ................................................................................22

36.   Execution in Counterparts..................................................................................22

37.   Continuing Jurisdiction......................................................................................22

38.   Deadlines ............................................................................................................22

39.   Communications to Plaintiff, Class Counsel, the Settlement Class, and Eyebobs ...........22

<u>Settlement Agreement</u>

1.    **Introduction.** This Agreement (all capitalized terms have the meanings set forth in Section 2) is entered into by and between Eyebobs, LLC and Anthony Hammond Murphy, individually and on behalf of the Settlement Class.

    1.1.    Eyebobs, operates, and controls the Website, which is open to consumers in the United States through the internet.

    1.2.    This Agreement applies to the Website, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps, but not Subsequently Abandoned Websites and Mobile Apps.

    1.3.    Plaintiff uses screen reader auxiliary aids to access digital information and is a person with a disability as that term is used in the ADA. Plaintiff has attempted to patronize the Website and intends to do so again in the future.

    1.4.    On January 7, 2021, Plaintiff filed this Lawsuit, in which Plaintiff asserts that Eyebobs does not have, and has never had, adequate corporate policies and practices that are reasonably calculated to cause the Website to be fully accessible to Blind or Visually Disabled individuals, in violation of the ADA.

    1.5.    On September 2, 2021, Plaintiff filed a Motion for Leave to File an Amended Class Action Complaint. The Court granted Plaintiff's Motion and the Clerk docketed Plaintiff's Amended Class Action Complaint the same date.

    1.6.    Eyebobs denies Plaintiff's allegations but the Parties nevertheless wish to affect a complete resolution and settlement of all claims, disputes and controversies relating to the allegations of Plaintiff and the Settlement Class, and to resolve their differences and disputes by settling the Lawsuit.

    1.7.    The terms of all exhibits attached hereto are fully incorporated into this Agreement and are an integral part thereof. The terms of this Agreement, where applicable, are fully incorporated into all exhibits and are, where applicable, an integral part thereof. To the extent that there are any conflicts or inconsistencies between the terms of this Agreement and any of the exhibits, the terms of the Agreement shall control.

    1.8.    This Agreement and all exhibits are binding on Eyebobs' subsidiaries, successors and assigns.

2.    **Definitions.**

2.1.    **"Accessible" or "Accessibility"** refers to digital content that provides effective communication to all users, generally in accordance with the success criteria of the WCAG 2.1.

2.2.    **"Accessibility Audit"** means the initial audit of the Website required by Section 8 of this Agreement.

2.3.    **"Accessibility Coordination Team"** means the team designated by Eyebobs to serve the purposes of Sections 6 and 13 of this Agreement.

2.4.    **"Accessibility Consultant"** means the person or company designated by Eyebobs to serve the purposes of Sections 7 and 15 of this Agreement.

2.5.    **"Accessibility Statement"** means the statement required by Section 10 of this Agreement that must demonstrate Eyebobs' commitment to implementing accessible services to blind and visually disabled individuals and that provides accessible contact information for such individuals to contact Eyebobs with accessibility-related questions, comments, or concerns.

2.6.    **"Accessibility Strategy"** means the corrective action strategy required by Section 9 of this Agreement.

2.7.    **"ADA"** means Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations.

2.8.    **"Agreement"** means this agreement and the exhibits attached hereto.

2.9.    **"Agreement Term"** means the time from the Effective Date through the end of three (3) years from the Effective Date.

2.10.    **"Annual Report"** means the document required by Section 22 of this Agreement that Eyebobs shall submit to Class Counsel and Plaintiff on the Effective Date's anniversary date during the Agreement Term, and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, stating the status of the implementation of the Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

2.11.    **"Blind or Visually Disabled"** means, with respect to an individual, a physical impairment that substantially limits the major life activity of seeing, pursuant to the ADA, 42 U.S.C. § 12102(1)-(2).

2.12.  **"Class Counsel"** means Kevin Tucker and Kevin Abramowicz of East End Trial Group LLC and Lawrence H. Fisher.

2.13.  **"Costs"** means all out-of-pocket expenses reasonably incurred and shall include (but not be limited to) amounts payable to experts.

2.14.  **"Court"** means United States District Court for the Western District of Pennsylvania.

2.15.  **"Digital Properties"** means the Website, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.16.  **"Dispute Resolution Procedure"** means the process described in Section 23 hereof.

2.17.  **"Effective Date"** means the date on which all conditions precedent set forth in Section 3 of this Agreement are completed.

2.18.  **"End User Test"** means annual testing required by Section 15 of this Agreement to be performed by individuals who have training and experience in the manner in which Blind or Visually Disabled individuals use a screen reader to navigate, browse, and conduct business online, to evaluate whether the Digital Properties are Accessible.

2.19.  **"Eyebobs"** means Eyebobs, LLC.

2.20.  **"Eyebobs Parties"** means Eyebobs and its present and former parents and subsidiaries and each of their respective present, former, or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors, insurers, and assigns.

2.21.  **"Eyebobs Personnel"** means all persons who are employed by Eyebobs and who have managerial responsibility for the design and development of the Digital Properties.

2.22.  **"Eyebobs Settlement Contact"** means a Eyebobs employee designated as the initial point of contact for Class Counsel and Plaintiff with respect to issues concerning this Agreement. Eyebobs shall notify Class Counsel and Plaintiff in writing of the person designated as the Eyebobs Settlement Contact within ten (10) days of the Effective Date. Eyebobs shall also notify Class Counsel and Plaintiff in writing should a new individual be designated as the Eyebobs Settlement Contact during the Agreement Term. Such notice shall be required within ten (10) days of designation of the new Eyebobs Settlement Contact.

2.23.   **"Final Approval"** means approval given in a written order to this Agreement by a United States District Court Judge or Magistrate of competent jurisdiction after notice to the Settlement Class and Hearing.

2.24.   **"First Extended Agreement Term"** means the time from the Agreement Term through the end of four (4) years from the Effective Date.

2.25.   **"Injunctive Releasing Parties"** means Plaintiff and all Settlement Class Members, and each of their executors, successors, heirs, assigns, administrators, agents, and representatives.

2.26.   **"Lawsuit"** means *Murphy v. Eyebobs, LLC*, Case No. 1:21-cv-00017-RAL (W.D. Pa.).

2.27.   **"Letter of Reasonable Accessibility"** means the semi-annual letter issued by the Accessibility Consultant that identifies the basis for the conclusion that the Website is reasonably accessible, explaining the testing standards, testing for diverse abilities, identified discovered issues and plans for addressing them or explaining how they have been resolved.

2.28.   **"Modified Bug Fix Priority"** means the policies required by Section 12 of this Agreement.

2.29.   **"New Websites and Mobile Apps"** means any website or mobile application that Eyebobs develops, starts to operate, and which is publicly available to consumers in the United States after the Effective Date of this Agreement.

2.30.   **"Notice Deadline"** means the deadline for publishing notice to be set by the Court as part of the Preliminary Approval process.

2.31.   **"Party"** refers to Eyebobs, Plaintiff, or the Settlement Class.

2.32.   **"Parties"** refers to Eyebobs, Plaintiff, and the Settlement Class.

2.33.   **"Plaintiff"** means Anthony Hammond Murphy.

2.34.   **"Preliminary Approval"** means the initial approval by the Court of the terms of this Agreement, which will occur before any notice being provided to class members in accordance with this Agreement.

2.35.   **"Released Injunctive Claims"** means any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-

monetary relief, based on the Accessibility of the Digital Properties to persons who are limited in the life activity of seeing and who use screen reader auxiliary aids to access digital information, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporates the ADA or (b) sets forth standards or obligations coterminous with or equivalent to the ADA. The "Released Injunctive Claims" cover all conduct concerning the Accessibility of the Digital Properties through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

2.36.  **"Second Extended Agreement Term"** means the time from the First Extended Agreement Term through the end of five (5) years from the Effective Date.

2.37.  **"Settlement Class"** or **"Settlement Class Members"** means a national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Digital Properties from the United States.

2.38.  **"Settlement Website"** means the search-engine-optimized website located at https://eyebobsADAsettlement.com and operated by a stipulated class action settlement administrator or similar entity that will provide the stipulated class action settlement notice pursuant to Section 27 of this Agreement.

2.39.  **"Status Report"** means the written evaluation required in Section 7 of this Agreement that (a) identifies content, features, and services on the Digital Properties that are not fully and equally accessible to individuals who use screen reader auxiliary aids, and (b) recommends steps Eyebobs must take to ensure their remediation.

2.40.  **"Subsequently Abandoned Websites and Mobile Apps"** means any website or mobile application, including the Digital Properties, that Eyebobs ceases to operate or make available to consumers in the United States after the Effective Date of this Agreement.

2.41.  **"Subsequently Acquired Websites and Mobile Apps"** means any website or mobile application that Eyebobs acquires from a third party, starts to operate, and which is publicly available to consumers in the United States after the Effective Date of this Agreement.

2.42.  **"Third-Party Content"** means cloud-based technologies provided by someone other than Eyebobs and inserted as lines of JavaScript on the Digital Properties in

order to transfer data and content between the technology provider and consumers' browsers. Examples of Third-Party Content include instant messengers (*e.g.* LiveChat), technology that allows consumers to make installment payments (*e.g.* Klarna, Affirm, Sezzle, and Afterpay), accessibility overlays (*e.g.* accessiBe and UserWay), and advertisements displayed in pop-up windows.

2.43. **"WCAG 2.1"** means Web Content Accessibility Guidelines 2.1, including the WAI-ARIA.

2.44. **"Website"** means the digital property located at https://www.eyebobs.com/.

3. **Conditions Precedent.** This Agreement shall be conditioned and effective only upon the occurrence of all of the following events:

3.1. The Court grants Preliminary Approval of this Agreement, and orders certification of the Settlement Class and notice to the Settlement Class Members.

3.2. Notice is provided to the Settlement Class in accordance with Section 27 of this Agreement.

3.3. The Court grants Final Approval of this Agreement and enters Judgment in accordance with the terms set forth herein after a fairness hearing has been conducted, and all such orders and approvals have become final and non-appealable.

4. **Eyebobs Shall Make Its Digital Properties Accessible.** Eyebobs shall ensure Blind or Visually Disabled individuals full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties as provided for in this Section:

4.1. Within twenty-four (24) months of the Effective Date, or by the end of the Agreement Term, Eyebobs shall ensure the U.S. portion of the Website is Accessible.

4.2. Eyebobs shall ensure the U.S. portion of any New Websites and Mobile Apps is Accessible at the time of their release.

4.3. Eyebobs shall ensure the U.S. portion of Subsequently Acquired Websites and Mobile Apps is Accessible within twelve (12) months of their acquisition.

**5.    Third-Party Content.**

5.1.    Eyebobs shall not be required to ensure Third-Party Content is Accessible unless the Third-Party Content is necessary for consumers to complete a purchase, perceive information about a discount, special offer, or installment plan, or contact Eyebobs' customer service.

5.2.    After the Effective Date of this Agreement, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content, Eyebobs shall request that the vendor commit to provide content in a format that confirms to WCAG 2.1 or can be made to confirm to WCAG 2.1. If during this contracting process Eyebobs issues a request for proposal for development or inclusion of Third-Party Content on the Digital Properties, then Eyebobs shall include Accessibility as a criterion. For Third-Party Content that is not subject to a written contract, Eyebobs shall seek out such content that confirms to WCAG 2.1 or can be made to conform to WCAG 2.1.

5.3.    If, after following the process set forth in this Section, Eyebobs is unable to obtain Third-Party Content that conforms to WCAG 2.1, it shall advise Class Counsel and Plaintiff, consistent with Section 21, that obtaining or providing conforming Third-Party Content would fundamentally alter the nature of Eyebobs' good and services and would result in an undue burden.

**6.    Accessibility Coordination Team.**

6.1.    Within three (3) months of the Effective Date of this Agreement, Eyebobs shall designate one or more employees as the Accessibility Coordination Team for the Digital Properties. Eyebobs shall notify Plaintiff and Class Counsel when this designation is complete.

6.2.    The Accessibility Coordination Team shall be responsible for coordinating Eyebobs' compliance with Sections 4 through 15 of this Agreement.

6.3.    Eyebobs shall maintain the Accessibility Coordination Team through at least the Agreement Term, and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

**7.    Accessibility Consultant and Status Report.**

7.1.    Within six (6) months of the Effective Date of this Agreement, Eyebobs shall retain an Accessibility Consultant knowledgeable about digital accessibility, the ADA, and Accessibility if it has not already done so. Eyebobs shall inform Plaintiff of its selection of an Accessibility Consultant.

7.2.   The Accessibility Consultant's duties shall include: (a) assisting Eyebobs to conduct an Accessibility Audit of the Website; (b) advising Eyebobs on how to make the Website Accessible; (c) verifying that the Website is Accessible by the end of the Agreement Term or, if applicable, the First Extended Agreement Term and Second Extended Agreement Term; (d) verifying that any New Websites and Mobile Apps, and any Subsequently Acquired Websites and Mobile Apps, are Accessible; and (e) verifying compliance with Section 5 of this Agreement.

7.3.   The Accessibility Consultant shall provide Eyebobs with a Status Report. In the Status Report, the Accessibility Consultant shall (a) identify content, features, and services on the Digital Properties that are not fully and equally accessible to individuals who use screen reader auxiliary aids, and (b) recommend steps Eyebobs must take to ensure Accessibility.

7.4.   Eyebobs shall include a copy of the Status Report as an exhibit to the Annual Report provided to Class Counsel and Plaintiff on the anniversary of the Effective Date during the Agreement Term.

7.5.   Within three (3) months of any change in Accessibility Consultant, Eyebobs shall notify Plaintiff and Class Counsel if it appoints or retains a new Accessibility Consultant during the Agreement Term, and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

**8.    Accessibility Audit.**

8.1.   Within nine (9) months of the Effective Date of this Agreement, Eyebobs shall complete the Accessibility Audit.

8.2.   The Accessibility Audit shall be conducted in a professional manner and shall be benchmarked by appropriate processes, including automated and end-user testing, consistent with the Accessibility Consultant's recommendations.

8.3.   Eyebobs shall provide a copy of the Accessibility Audit as an exhibit to the Annual Report due to Class Counsel and Plaintiff on the first anniversary of the Effective Date.

**9.    Accessibility Strategy.**

9.1.   Within eighteen (18) months of the Effective Date of this Agreement, Eyebobs shall develop and implement an Accessibility Strategy designed to ensure the Digital Properties are Accessible by the Agreement Term.

9.2.    Eyebobs shall consider the agreements reached in this Agreement, the Accessibility Audit, the Accessibility Statement, and the recommendations and Status Reports of the Accessibility Consultant when implementing the Accessibility Strategy.

9.3.    Within eighteen (18) months of the Effective Date of this Agreement, Eyebobs shall provide a copy of the Accessibility Strategy to Class Counsel and Plaintiff.

9.4.    Within eighteen (18) months of the Effective Date of this Agreement, Eyebobs shall disseminate the Accessibility Strategy among Eyebobs Personnel.

## 10.    Accessibility Statement.

10.1.    Within nine (9) months of the Effective Date of this Agreement, Eyebobs shall develop the Accessibility Statement.

10.2.    The Accessibility Statement shall at minimum, (a) state that Eyebobs is making efforts to maintain and increase access to the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Websites, and that may be provided by and through any New Websites and Mobile Apps or Subsequently Acquired Websites and Mobile Apps; (b) solicit feedback from visitors to Eyebobs' Digital Properties on how the accessibility of these properties can be improved; and (c) include an accessible means of submitting accessibility questions and problems, including a toll-free telephone number and an email address to provide feedback about the Accessibility Statement and the Digital Properties.

10.3.    Within nine (9) months of the Effective Date of this Agreement, Eyebobs shall provide a copy of the Accessibility Statement to Class Counsel and Plaintiff.

10.4.    Within twelve (12) months of the Effective Date of this Agreement, Eyebobs shall add a section or page on the Website through which users can access the Accessibility Statement. Eyebobs shall display a link to the Accessibility Statement at the beginning of a screen reader user's experience on the Digital Properties, such as by using index values placed on aria labels, so that screen readers perceive the link to the Accessibility Statement as if it were located at the top of each homepage throughout the Digital Properties. This link shall include alternative text which reads, "Click to view our Accessibility Statement or contact us with accessibility-related questions."

## 11.    Accessibility Training.

11.1.    Within eighteen (18) months of the Effective Date of this Agreement, Eyebobs shall train all employees responsible for website and mobile application design,

development, and maintenance to ensure future design, development, and maintenance of the Digital Properties to ensure the Digital Properties are and remain Accessible.

11.2.   To the extent Eyebobs has already provided training to all current employees responsible for website and mobile application design, development, and maintenance, then Eyebobs shall provide refresher training to those employees within eighteen (18) months of the Effective Date of this Agreement.

11.3.   Eyebobs shall provide accessibility training to all newly-hired employees responsible for website and mobile application design, development, and maintenance within 180-days of their hire date.

11.4.   Eyebobs shall provide refresher accessibility training to such employees on an annual basis commencing in 2023.

11.5.   During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, and consistent with the annual reporting requirements set forth in Section 22, below, Eyebobs shall provide copies of its accessibility training material to Class Counsel and Plaintiff.

**12.     Modified Bug Fix Priority.**

12.1.   Within eighteen (18) months of the Effective Date of this Agreement, Eyebobs shall make reasonable efforts to modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create accessibility barriers, including those that create nonconformance with WCAG 2.1.

12.2.   Eyebobs shall via such reasonable efforts ensure that any bugs that create accessibility barriers to the Digital Properties are remedied with the same level of priority (*e.g.*, speed, resources used to remediate) as any other equivalent loss of function for individuals without disabilities.

**13.     Accessibility Support.**

13.1.   Within eighteen (18) months of the Effective Date of this Agreement, Eyebobs shall provide support during regular business hours to help Blind or Visually Disabled individuals resolve accessibility issues encountered while using the Digital Properties. Eyebobs shall train the Accessibility Coordination Team to review, handle, or escalate accessibility related questions and comments generated by the toll-free telephone number, and email address published in the Accessibility Statement of the Website.

13.2.   Should any complaint or issue that concerns or relates to compliance with the terms of this Agreement be made through the customer service personnel, said complaint or issue shall be forwarded to the Accessibility Coordination Team, who then shall coordinate internally to make sure any reported nonconformance by a Blind or Visually Disabled individual is fixed as soon as possible, assuming the issue can be fixed, but no later than ninety (90) days after it was reported to the Accessibility Coordination Team.

13.3.   The Eyebobs Settlement Contact shall forward the complaint or issue to Class Counsel and Plaintiff as part of Eyebobs' Annual Report or semi-annual Letter of Reasonable Accessibility, whichever is next due following the date the Accessibility Coordination Team received the complaint or issue. To the extent any such complaint or issue is not resolved, it shall be subject to the Dispute Resolution Procedure.

**14.     Quarterly Accessibility Audit.**

14.1.   During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, Eyebobs, or a consultant retained on its behalf, shall perform an automated Accessibility Audit on a quarterly (four times per year) basis to evaluate whether the Digital Properties are Accessible.

14.2.   The Eyebobs Settlement Contact shall forward the results of each Accessibility Audit to Class Counsel and Plaintiff as part of Eyebobs' Annual Report and semi-annual Letter of Reasonable Accessibility.

**15.     Annual End-User Accessibility Testing.**

15.1.   During the Agreement Term, the Accessibility Consultant shall perform an annual End User Test, with said testing to be performed by individuals who have training and experience in the manner in which Blind or Visually Disabled individuals use a screen reader to navigate, browse, and conduct business online, to evaluate whether the Digital Properties are Accessible.

15.2.   The Eyebobs Settlement Contact shall forward the results of the annual End User Test to Class Counsel and Plaintiff as part of Eyebobs' Annual Report.

**16.     Agreement Term.** The Agreement Term shall be three (3) years from the Effective Date.

16.1.   If the Accessibility Consultant cannot provide written verification of its conclusion that the Website is Accessible by the end of the Agreement Term pursuant to Section 7, then the term of the Agreement shall extend to the First Extended Agreement Term.

16.2.    If the Accessibility Consultant cannot provide written verification of its conclusion that the Website is Accessible by the end of the First Extended Agreement Term pursuant to Section 7, then the term of the Agreement shall extend to the Second Extended Agreement Term.

17.    **Monitoring and Compliance.** Class Counsel and Plaintiff shall monitor Eyebobs' compliance with Sections 4 through 15 as more fully described in this paragraph.

17.1.    Class Counsel and Plaintiff shall be entitled to visit the Digital Properties at any time without notice for the purpose of evaluating compliance with Sections 4 through 15.

17.2.    Eyebobs shall include in the Annual Report copies of accessibility related questions and comments generated by the toll-free telephone number, and email address published in the Accessibility Statement of the Websites, or generated or received in any other manner or through any other medium, to Class Counsel and Plaintiff.

18.    **Eyebobs' Reporting Schedule.** Eyebobs shall provide the following information to Class Counsel and Plaintiff during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

| Information | Deadline | See Agreement at Section |
|---|---|---|
| Annual Report | The Effective Date's anniversary | 2.10 |
| Letter of Reasonable Accessibility | Every six (6) months following the Effective Date | 2.27 |
| Third-Party Content that Eyebobs cannot confirm is Accessible | To be included in the Annual Report | 5.3 |
| Confirmation that Eyebobs has designated the Accessibility Coordination Team | 3 months of the Effective Date | 6.1 |
| Confirmation that Eyebobs has appointed or retained an Accessibility Consultant | 6 months of the Effective Date | 7.1 |

| | | |
|---|---|---|
| The Accessibility Consultant's Status Report | To be included in the Annual Report | 7.4 |
| Changes to the Accessibility Consultant | 3 months of the change | 7.5 |
| Accessibility Audit | To be included as an exhibit to the Annual Report due on the first anniversary of the Effective Date | 8.3 |
| Accessibility Strategy | 18 months of the Effective Date | 9.3 |
| Accessibility Statement | 9 months of the Effective Date | 10.3 |
| Accessibility Training Material | To be included in the Annual Report | 11.5 |
| Complaints received by Eyebobs' accessibility support personnel regarding the Digital Properties' accessibility | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 13.3 |
| The results of Eyebobs' semi-annual accessibility audit | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 14.2 |
| Annual end-user accessibility testing results | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 15.2 |
| Copies of accessibility-related questions and comments received by Eyebobs | To be included in the Annual Report | 17.2 |

**19.     Scope of Agreement.**

19.1.    The provisions of this Agreement shall apply to Eyebobs' policies, practices, and procedures with respect to Blind or Visually Disabled individuals within the United

States who use screen reader auxiliary aids to access the Digital Properties. The data that Eyebobs periodically reports to Class Counsel and Plaintiff pursuant to this Agreement shall contain relevant information for these consumers.

19.2. The provisions of this Agreement shall not apply to Subsequently Abandoned Websites and Mobile Apps.

19.3. Plaintiff expressly agrees that the resolution described herein is fair and adequate, and that the policies and procedures set forth in this Agreement are intended to remedy any and all alleged violations of the ADA and related state and local laws by Eyebobs with respect to the claims alleged by Plaintiff in this case.

**20. Incentive Award to Plaintiff.**

20.1. Subject to Court approval, Eyebobs shall pay the Plaintiff an incentive award in the amount of One Thousand Dollars and Zero Cents ($1,000.00).

20.2. Plaintiff waives any right to an incentive award in connection with this matter which exceeds the amount provided in Section 20.1.

20.3. Eyebobs shall pay the amount provided in Section 20.1 within fourteen (14) days of the Effective Date by sending a wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" at an account to be confirmed by Class Counsel before payment.

20.4. The Incentive Award shall not be subject to withholding deductions and Eyebobs may issue an IRS Form 1099 to Plaintiff, through Class Counsel at the address provided for notice below, in the amount provided in Section 20.1.

**21. Additional Information to Class Counsel and Named Plaintiff.**

21.1. Class Counsel and Plaintiff may request additional information regarding any matter covered by this Agreement if such additional information is necessary to determine whether or not Eyebobs is in compliance with this Agreement.

21.2. Eyebobs shall provide such additional information or state its objection to providing such information within fourteen (14) days of its receipt of a written request by Class Counsel and Plaintiff.

**22. Annual Report and Meet-and-Confers.**

22.1. During the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, on the Effective Date's anniversary date,

Eyebobs shall submit an Annual Report to Class Counsel and Plaintiff, stating the status of the implementation of this Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

22.2.   At Class Counsel's written request, Class Counsel and Eyebobs or its counsel will meet to discuss the Annual Report and review the implementation of this Agreement. Such meetings may be either in person or by telephone, as the Parties agree.

**23.**   **Dispute Resolution Procedure.** The Parties shall address disputes relating to any of the provisions of this Agreement as follows.

23.1.   Informal Dispute Resolution.

23.1.1.   If either Party believes that a dispute exists relating to any Section of this Agreement, it shall notify the other Party in writing, describing the dispute. The other Party shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

23.1.2.   If a Settlement Class Member believes a dispute exists relating to any Section of this Agreement, she may notify Class Counsel who, in turn, shall notify Eyebobs in writing, describing the dispute. Eyebobs shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

23.1.3.   Further, if a Settlement Class Member informs Eyebobs of a dispute relating to the provisions of this Agreement , Eyebobs shall notify Class Counsel and Plaintiff in writing, describing the dispute and providing the Settlement Class Member's contact information, if known. Eyebobs shall respond to the dispute in writing within fifteen (15) business days of receipt of the notice. The response shall be directed to Class Counsel and Plaintiff.

23.1.4.   Within fifteen (15) business days of receipt of the response described in Section 23.1.1, 23.1.2, or 23.1.3, counsel for both Parties shall meet and confer by telephone or in person and attempt to resolve the issue informally unless they both agree in writing that the issue has been successfully resolved. Absent such resolution, the Parties may agree to enter mediation on the issue in dispute.

23.1.5.   Eyebobs shall be responsible for all reasonable attorneys' fees and Costs incurred by Class Counsel and Plaintiff in pursuing informal

dispute resolution of a nonfrivolous claim pursuant to this Section 23.1.

23.2.    Submission to Mediation.

    23.2.1.    In the event that the Parties are unable to resolve their dispute through such meet-and-confer negotiations, then within forty-five (45) days of receipt of the letter raising the dispute, the dispute shall be submitted to mediation before a mutually-agreed upon mediator in Pittsburgh, Pennsylvania or such other location as may be mutually agreed by the parties. The mediation may be conducted electronically. Eyebobs shall pay the cost of the mediation not including Plaintiff's attorneys' fees. If Eyebobs declines to pay such costs, Plaintiff may submit the dispute to the Court.

23.3.    Submission to the Court.

    23.3.1.    If the meet-and-confer process and mediation pursuant to Sections 23.1 and 23.2 above do not result in a resolution of the dispute within a reasonable time, any Party may make a motion for resolution of the dispute by Judge Richard A. Lanzillo or any other United States District Judge or Magistrate Judge who may be assigned to the case.

    23.3.2.    In the event either Party finds that it is necessary to seek resolution of the dispute by the Court, the Court shall award reasonable attorneys' fees and costs incurred in pursuing dispute resolution as set forth in this Section 23 of the Agreement in accordance with the prevailing party standards under the ADA.

## 24.    Attorneys' Fees and Costs up to the Date of Final Approval.

24.1.    Subject to Court approval, Eyebobs shall pay Plaintiff's reasonable attorneys' fees and Costs incurred in connection with this matter up to and including the Effective Date of this Agreement by the Court in the amount of Twenty-Nine Thousand Dollars and Zero Cents ($29,000.00). Class Counsel shall provide Eyebobs with a current W-9 and any further documentation or information necessary to allow it to meet its payment obligations herein.

24.2.    Plaintiff waives any right to reasonable attorneys' fees and Costs incurred in connection with this matter up to and including the Effective Date of this Agreement which exceed the amount provided in Section 24.1.

24.3.    Eyebobs shall pay the amount provided in Section 24.1 within fourteen (14) days

of the Effective Date by sending a wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" at an account to be confirmed by Class Counsel before payment.

24.4.    Eyebobs may issue an IRS Form 1099 to East End Trial Group LLC for the amount provided in Section 24.1.

## 25.    Attorneys' Fees and Costs after Final Approval.

25.1.    Final Approval through the Agreement Term.

25.1.1.    Eyebobs shall pay reasonable attorneys' fees and Costs incurred by Plaintiff after Final Approval and during the Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

25.1.2.    Other than the right to attorneys' fees and Costs for pursuing nonfrivolous claims under the Dispute Resolution Procedure, if awarded by the Court, Plaintiff waives any right to reasonable attorneys' fees and Costs for work performed by Class Counsel after Final Approval and during the Agreement Term which exceed the amount provided in Section 25.1.1.

25.1.3.    Eyebobs shall pay the amount provided in Section 25.1.1 within six (6) months of the Effective Date by sending a wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" at an account to be confirmed by Class Counsel before payment.

25.1.4.    Eyebobs may issue an IRS Form 1099 to East End Trial Group LLC for the amount provided in Section 25.1.1.

25.2.    First Extended Agreement Term

25.2.1.    If the Agreement Term is extended to four years from the Effective Date, then Eyebobs shall pay additional reasonable attorneys' fees and Costs incurred by Plaintiff during the First Extended Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

25.2.2.    Other than the right to attorneys' fees and Costs for pursuing nonfrivolous claims under the Dispute Resolution Procedure if

awarded by the Court, Plaintiff waives any right to reasonable attorneys' fees and Costs for work performed by Class Counsel during the First Extended Agreement Term which exceed the amount provided in Section 25.2.1.

25.2.3.   Eyebobs shall pay the amount provided in Section 25.2.1 within three (3) months of the start of the First Extended Agreement Term by sending a wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" at an account to be confirmed by Class Counsel before payment.

25.2.4.   Eyebobs may issue an IRS Form 1099 to East End Trial Group LLC for the amount provided in Section 25.2.1.

25.3.   Second Extended Agreement Term

25.3.1.   If the First Extended Agreement Term is extended to five years from the Effective Date, then Eyebobs shall pay additional reasonable attorneys' fees and Costs incurred by Plaintiff during the Second Extended Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

25.3.2.   Other than the right to attorneys' fees and Costs for pursuing nonfrivolous claims under the Dispute Resolution Procedure if awarded by the Court, Plaintiff waives any right to reasonable attorneys' fees and Costs for work performed by Class Counsel during the Second Extended Agreement Term which exceed the amount provided in Section 25.3.1

25.3.3.   Eyebobs shall pay the amount provided in Section 25.3.1 within three (3) months of the start of the Second Extended Agreement Term by sending a wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" at an account to be confirmed by Class Counsel before payment.

25.3.4.   Eyebobs may issue an IRS Form 1099 to East End Trial Group LLC for the amount provided in Section 25.3.1.

## 26.   Preliminary Approval, Objections, and Fairness Hearing.

26.1.   Promptly after execution of this Agreement, Plaintiff shall request that the Court schedule a preliminary approval hearing within fourteen (14) days of the request or

as soon thereafter as the Court may set the hearing and that the Court preliminarily approve the Agreement, preliminarily or conditionally approve the Settlement Class, preliminarily enjoin Settlement Class Members from bringing any claims to be released pursuant to this Agreement, and approve the proposed form of Notice and plan for providing notice submitted by the Parties.

26.2.   Plaintiff shall ask the Court to schedule a fairness and final approval hearing for ninety (90) days after the Notice Deadline set by the Court, or as soon thereafter as the Court may set the hearing.

26.3.   Plaintiff shall ask the Court to order Plaintiff to move for reasonable attorneys' fees and costs within forty-five (45) days after the Notice Deadline set by the Court.

26.4.   Plaintiff shall ask the Court to order the following procedures for objections: Any Settlement Class Member may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Settlement Class Members shall have the right, and only if they expressly seek it in their objection, to present objections orally at the Fairness Hearing. Responses by Plaintiff to any timely-filed objections shall be made no less than five (5) days before the Fairness Hearing. Plaintiff shall provide copies of any objections that are provided to Plaintiff or Class Counsel to Eyebobs within five (5) days of receipt if such objections have not been previously shared with Eyebobs.

27.   **Notice.** As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval Order, Eyebobs shall at its expense:

27.1.   Cause a stipulated class action settlement notice to be published on the Settlement Website.

27.2.   Display a link to the Settlement Website at the beginning of a screen reader user's experience on the Website, such as by using index values placed on aria labels, so that screen readers perceive the link to the Settlement Website as if it were located at the top of the Website's homepage. This link shall include alternative text which reads, "Click to view our ADA Class Action Settlement Notice."

27.3.   Eyebobs shall also request the following organizations publish notice in the form of Section 27.4 in their respective electronic newsletters so the notice is sent out within sixty (60) days of Preliminary Approval. Eyebobs shall copy Class Counsel on each request at the addresses provided in Section 39.

(1)      American Council of the Blind,

(2)    American Foundation for the Blind,

(3)    Blinded American Veterans Foundation,

(4)    Blinded Veterans Association,

(5)    Foundation Fighting Blindness,

(6)    Guide Dogs for the Blind,

(7)    Lighthouse Guild International,

(8)    National Association of Blind Merchants,

(9)    National Council on Disability, and

(10)   National Federation of the Blind.

27.4.  "A proposed settlement has been reached that would resolve the class action lawsuit *Murphy v. Eyebobs, LLC*, No. 1:21-cv-00017 (W.D. Pa.). The lawsuit alleges that Eyebobs, LLC violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. by failing to take the necessary steps to ensure its online store, located at https://www.eyebobs.com/, does not discriminate against blind or visually disabled consumers who use screen reader auxiliary aids to access digital content. Under the settlement, Eyebobs, LLC agrees to take additional steps to make its website and any new website or mobile application it develops or acquires accessible to screen reader users.

For a more complete summary of the terms of the proposed settlement, please visit https://www.eyebobsADAsettlement.com."

## 28.    Judgment, Final Approval, and Dismissal, and effect of Court's Refusal to Grant Approval.

28.1.  Class Counsel and Plaintiff shall request that the Court enter a Final Judgment and Order granting Final Approval of this Agreement, certifying the Settlement Class and enjoining Settlement Class Members from asserting any Released Injunctive Claims. Among other things, the Final Judgment and Order shall attach this Agreement as an exhibit and shall provide that the Court retains jurisdiction through the Agreement Term, or, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, in order to enforce this Agreement in order to enforce this Agreement.

28.2.  This Lawsuit shall be dismissed with prejudice pursuant to Rule 41 of the Federal

Rules of Civil Procedure, no later than thirty (30) days following the expiration of the Agreement Term, or if applicable, the First Extended Agreement Term and Second Extended Agreement Term, in order to enforce this Agreement.

28.3    If the Court denies the Parties' request for final approval of this Settlement Agreement: (i) this Settlement Agreement will be null and void and of no force and effect; (ii) nothing in this Settlement Agreement will be deemed to prejudice the position of any of the Parties with respect to any matter; (iii) neither the existence of this Settlement Agreement, nor its contents, will be admissible in evidence, referred to for any purpose in any litigation or proceeding, or be deemed an admission by Eyebobs of any fault, wrongdoing, or liability; and (iv) prosecution of this Lawsuit shall resume and shall be conducted in accord with a schedule to be set by the Court.

29.    **No Admission of Liability.** By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by Eyebobs, direct or indirect, express or implied, that the Websites are in any way inaccessible or that Eyebobs has violated the ADA, or any other federal, state, or local law, code, regulation, order, or rule. Nothing in this Agreement shall operate as an admission by Eyebobs in any context other than within the settlement of this Lawsuit that any particular standard or standards are applicable under the ADA or any other federal or state law to the Websites.

30.    **Release.** Effective on the date of Final Approval, the Injunctive Releasing Parties unconditionally and forever fully and finally release, acquit, and discharge the Eyebobs Parties from the Released Injunctive Claims. Pursuant to this release, Plaintiff and Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term. Notwithstanding this release, Plaintiff and Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, in order to enforce this Agreement.

31.    **Class Certification.** Plaintiff and Class counsel acknowledge that Eyebobs does not consent to certification of any class pertaining to the claims asserted herein other than for settlement purposes on the terms set forth herein.

32.    **Entire Agreement.** This Agreement contains all the agreements, conditions, promises, and covenants among Eyebobs, Plaintiff, Class Counsel, and the Settlement Class regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of the present Agreement.

33.    **Modification.** Prior to Final Approval, this Agreement can only be amended by written

agreement of the Parties hereto. Following Final Approval, no modification of this Agreement shall be effective unless it is pursuant to Court Order.

34.    **Severability.** If any provision or any part of this Agreement thereof shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling, or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

35.    **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

36.    **Execution in Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall constitute an original for all purposes, including any copies of same, and all duplicate counterparts will be construed together and constitute one Agreement. The Parties will be bound by signatures on this document which are transmitted by mail, hand delivery, facsimile, email or any other electronic means to the other Party or, if applicable, counsel of record for the other Party. Such signature will have the same binding effect as any original signature. A typed or electronic signature will have the same effect as a handwritten signature.

37.    **Continuing Jurisdiction.** The Parties agree that the United States District Court for the Western District of Pennsylvania shall have continuing jurisdiction throughout the Agreement Term to interpret and enforce this Agreement.

38.    **Deadlines.** The Parties and the Court recognize that from time-to-time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, pandemics, and negotiations with third parties, cause delays in the accomplishment of objectives no matter how well intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Agreement that require that certain acts be taken within specified periods, the Parties understand and agree that Court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Agreement cannot be taken within the specified time period, that Party shall promptly notify the other Parties that it anticipates a delay, the reasons for the delay and a proposed alternative deadline. The Parties shall endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to the Dispute Resolution Procedure.

39.    **Communications to Plaintiff, Class Counsel, the Settlement Class, and Eyebobs.** All letters, notices, IRS Form 1099s, requests, demands and other communications required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided

by electronic mail, facsimile, and/or next-day express delivery service and addressed as follows:

39.1.    To Plaintiff, Class Counsel, or the Settlement Class:

   Kevin Tucker
   Kevin Abramowicz
   EAST END TRIAL GROUP LLC
   6901 Lynn Way, Ste. 215
   Pittsburgh, PA 15208
   ktucker@eastendtrialgroup.com
   kabramowicz@eastendtrialgroup.com
   Tel. (412) 877-5220

   Lawrence H. Fisher
   One Oxford Centre
   301 Grant Street, Suite 270
   Pittsburgh, PA 15219
   lawfirst@lawrencefisher.com
   Tel. (412) 577-4040

39.2.    To Eyebobs:

   Sunshine R. Fellows
   LEWIS BRISBOIS BISGAARD & SMITH LLP
   429 Fourth Avenue, Suite 805
   Pittsburgh, PA 15219
   Sunshine.R.Fellows@lewisbrisbois.com
   Tel. (412) 250-7304

   Eyebobs may change the individuals to whom notices and communications required by this Agreement shall be sent by providing Class Counsel and Plaintiff with written notification that it wishes to do so.

   *Signature block begins on the next page.*

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**ANTHONY HAMMOND MURPHY**

DATED: 9·3·21    By: _____

**EYEBOBS, LLC**

DATED: _____    By: _____

Mike Hollenstein

Its:   Chief Executive Officer

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**ANTHONY HAMMOND MURPHY**

DATED: _____    By: _____

**EYEBOBS, LLC**

DATED: 9/1/21    By: _____
                     Mike Hollenstein
                 Its:  Chief Executive Officer

**APPROVED AS TO FORM AND CONTENT:**

By: _Kevin W. Tucker_              By: _/s/ Sunshine R. Fellows_

Kevin Tucker (He/Him)                             Sunshine R. Fellows
Kevin Abramowicz (He/Him)                LEWIS BRISBOIS BISGAARD &
EAST END TRIAL GROUP LLC             SMITH LLP
6901 Lynn Way, Ste. 215                     429 Fourth Avenue, Suite 805
Pittsburgh, PA 15208                        Pittsburgh, PA 15219
ktucker@eastendtrialgroup.com          Sunshine.R.Fellows@lewisbrisbois.com
kabramowicz@eastendtrialgroup.com     Tel. (412) 250-7304
Tel. (412) 877-5220

                                                _Counsel for Eyebobs, LLC_

Lawrence H. Fisher
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
lawfirst@lawrencefisher.com
Tel. (412) 577-4040

_Counsel for Plaintiff and the
Settlement Class_